UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALGONQUIN SHIPPING CORP., <br><br>                                Petitioner,<br><br>- against -<br><br>ARCHER DANIELS MIDLAND COMPANY (a/k/a ARCHER-DANIELS-MIDLAND CO.),<br><br>                                Respondent. | No. 13-cv-1747 (JMF) |

**ANSWER AND COUNTERCLAIM**

Respondent ARCHER DANIELS MIDLAND COMPANY (a/k/a ARCHER-DANIELS-MIDLAND CO.) ("Respondent" or "ADM"), for its answer to the Petition to Confirm Arbitration Award (the "Petition"), states as follows:

1. Denies the allegations in paragraph 1, except states that Petitioner Algonquin Shipping Corp. ("Petitioner" or "Owner") purports to bring this proceeding as stated therein.

2. Denies knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 2.

3. Admits.

4. Admits.

5. Admits.

6. Admits.

7. Admits that this Court has personal jurisdiction over ADM pursuant to the parties' agreed-upon arbitration clause designating New York as the place of arbitration and ADM's participation in the arbitration in New York, but otherwise denies the allegations in paragraph 7.

8. Denies.

9. Denies that the documents attached to the Petition as Exhibit A constitute a binding contract between the parties, except admits that Clause 16 of the unsigned Memorandum of Agreement contained within the documents attached to the Petition as Exhibit A (the "Alleged Prior Agreement") contains an arbitration clause whereby disputes arising out of or relating to the Alleged Prior Agreement were to be submitted to arbitration at New York in accordance with the rules of the Society of Maritime Arbitrators, Inc.

10. Denies that ADM breached any contract, but admits that Petitioner purported to commence arbitration in accordance with the arbitration clause contained in the Alleged Prior Agreement.

11. Admits.

12. Admits.

13. Admits.

14. Admits that on February 13, 2013, the Panel issued the Award, but otherwise refers to the Award for the contents thereof.

15. Admits that the Award provides for the payment of interest, but otherwise refers to the Award for the contents thereof.

16. Admits that the arbitration clause in the Alleged Prior Agreement provided that the Award may be made a rule of the Court, but insofar as the allegations in paragraph 16 are construed to allege that ADM was bound by the Alleged Prior Agreement, ADM denies the allegations.

17. Denies the allegations in paragraph 17, except admits that ADM has not yet paid any part of the Award to Petitioner.

18. Admits.

19. Denies.

20. Admits that at the time Owner filed the Petition, there were no pending applications to vacate or modify the Award, but further states that Owner was made aware on the date it filed the Petition that ADM intended to move for vacatur of the Award.

21. Denies.

**FIRST DEFENSE**
**(9 U.S.C. § 10: Manifest Disregard of the Law)**

22. The Panel manifestly disregarded the law in determining the Award when it ignored controlling and binding precedent clearly applicable to this case, namely that a subsequent contract between the same parties regarding the same subject matter supersedes any prior contract.

23. Specifically, the Panel refused to apply the terms of the parties' final, signed agreement which governed the terms of the sale of the M/V Algonquin, contained no reservation of rights by Owner to enforce the Alleged Prior Agreement, and included integration language precluding any consideration of parol evidence.

24. The Award should therefore be vacated pursuant to 9 U.S.C. § 10 and cannot be confirmed.

**SECOND DEFENSE**
**(Failure to State a Claim on which Relief May be Granted)**

25. The Petition fails to state a claim on which relief may be granted.

**COUNTERCLAIM**
**(Vacatur Pursuant to 9 U.S.C. § 10)**

ADM hereby counterclaims against Owner and states as follows:

**The Controversy and the Award**

26. Beginning with negotiations in the summer of 2008, and concluding with a

closing in January 2009, Owner agreed to sell the M/V Algonquin (the "Vessel") to ADM, pursuant to a Memorandum of Agreement, as described below.

27. The dispute underlying this proceeding concerned whether ADM agreed to purchase the Vessel in September 2008 for approximately $22.5 million, pursuant to the Alleged Prior Agreement that ADM refused to sign, asserting that contract issues remained open and no deal had been reached, or whether ADM agreed to purchase the Vessel in October 2008 for approximately $18 million, pursuant to a Memorandum of Agreement, dated October 8, 2008 (the "Final Agreement"), that was signed by both parties, contained no reservation of rights, and expressly provided that the sale was "outright and definite, subject only to the terms and conditions of this Agreement."  A copy of the Alleged Prior Agreement is contained within the documents attached to the Petition as Exhibit A, and a copy of the Final Agreement is attached to the Affidavit of Bruce G. Paulsen, sworn to April 2, 2013 ("Paulsen Aff.") as Exhibit 1.

28. The parties' agreement to arbitrate is contained in Clause 16 of both the Alleged Prior Agreement and the Final Agreement, which provides:

> This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the Law of the State of New York and should any dispute arise out of this Agreement, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them shall be final, and for purpose of enforcing any award, this Agreement may be made a rule of the Court.
>
> The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. New York.  Arbitrators to be members of SMA.

29. Owner commenced arbitration pursuant to the above-referenced clause, and appointed Anthony J. Siciliano, a member of the SMA, to the Panel on December 2, 2009.  ADM appointed David Martowski, a member of the SMA, to the Panel on December 31, 2009.

Messrs. Siciliano and Martowski appointed Manfred Arnold, a member of the SMA, to chair the Panel on January 2, 2010.

30. The parties agreed to conduct the arbitration on documents, and submitted the following documents for consideration by the Panel, which effectively constituted cross-motions for summary judgment: (1) Owner's Submission of Claim, dated April 1, 2010, (2) ADM's Response, dated June 28, 2010, (3) Owner's Reply, dated September 16, 2010, (4) ADM's Memorandum in Response, dated October 5, 2010, (5) Owner's letter, dated October 26, 2010, (6) ADM's letter, dated November 5, 2010, (7) Owner's letter, dated November 17, 2010, and (8) ADM's letter, dated November 19, 2010. Copies of these submissions are attached to the Paulsen Affidavit as Exhibits 2 through 9, respectively.

31. For its part, Owner contended that the unsigned Alleged Prior Agreement constituted a binding contract, any subsequent negotiations were under a reservation of rights, and the Final Agreement was a so-called "mitigation contract," purportedly entered into by Owner solely to mitigate its damages arising out of ADM's alleged breach of the former.

32. ADM responded that (1) the Alleged Prior Agreement was not a binding contract because it was never signed by ADM and certain items remained open, (2) even if the Alleged Prior Agreement was a binding contract, the Final Agreement superseded and/or invalidated it, (3) similarly, the Final Agreement constituted a novation or abandonment of the Alleged Prior Agreement, and (4) the Final Agreement contained no "reservation of rights" language, an express statement that it was "outright and definite, subject only to the terms and conditions of this Agreement," and was therefore the only binding contract for the sale of the Vessel – which, ADM argued, could not be sold twice between the same parties.

33. On January 17, 2011, the Panel summarily denied the parties' applications and

directed the parties to proceed to discovery.

34. Upon the completion of discovery, the parties advised the Panel that they intended to resubmit the dispute to the panel on the prior submissions, complemented by oral argument, to be held on July 12, 2012. A copy of the oral argument transcript is attached to the Paulsen Affidavit as Exhibit 10.

35. At the conclusion of the oral argument, the Panel agreed to accept additional letter-briefs from the parties on the issue of whether the Final Agreement superseded the Alleged Prior Agreement under New York law. Copies of ADM's letter-brief, dated August 3, 2012, and Owner's letter-brief, dated August 13, 2012, are attached to the Paulsen Affidavit as Exhibits 11 and 12, respectively.

36. On February 13, 2013, the Panel issued the Award in favor of Owner, awarding it $5,349,767.38, with interest to accrue at the rate of 3.25% per annum on the principal amount of $4,582,500.00 if the award is not paid within 30 days after issuance of the award. A copy of the Award is attached to the Petition as Exhibit B.

37. The Panel concluded, among other things, that the Alleged Prior Agreement constituted a binding contract, and the Final Agreement was a so-called "mitigation contract which entitles [Owner] to an award of damages." Award, at 14.

38. The Panel further ignored the Final Agreement's integration clause, claiming that it was only intended to address the "vessel's inspection as to condition and the acceptance of the classification records." *Id.* at 16.

39. Finally, although the Panel recognized that "one cannot sell the same ship twice and *no law exists stating that one can have two sales contracts for the same goods*," the Panel nevertheless stated, without any support, that "[t]he circumstances of this particular case do not

6

specifically require a reservation of rights clause in the [Final Agreement] because *we are dealing with two separate, independent contracts*." *Id.* at 18 (emphasis added).

**Grounds for Vacatur**

40. The Award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also referred to as the New York Convention, (the "Convention"), because it arises out of a legal relationship which is considered as commercial and such relationship is not entirely between citizens of the United States.  9 U.S.C. § 202.

41. Under Article V(1)(e) of the Convention, this Court can refuse confirmation of the Award where "the award . . . has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  The Second Circuit has interpreted this phrase to authorize vacatur of an arbitral award under the domestic law of the state in which the award was rendered, *i.e.*, the Federal Arbitration Act (the "FAA").

42. Under the FAA, the Award is in "manifest disregard of the law" and should therefore be vacated.  Specifically, the Panel ignored controlling and binding precedent clearly applicable to this case, namely that a subsequent contract between the same parties regarding the same subject matter supersedes the prior contract.  Yet, the Panel refused to apply the terms of the Final Agreement which governed the terms of the sale of the M/V Algonquin, contained no reservation of rights by Owner to enforce the Alleged Prior Agreement, and included express contractual language that the sale was "outright and definite, subject only to the terms and conditions of this Agreement," thus precluding recovery by Owner under the Alleged Prior Agreement.

43. Pursuant to 9 U.S.C. § 12, this application is timely, as it is made within the three-month time period permitted under the statute.

WHEREFORE, Respondent Archer Daniels Midland Company (a/k/a Archer-Daniels-Midland Co.) requests that this Court issue an order vacating the Award, denying Owner's motion to confirm the Award and dismissing the Petition, and granting Respondent such other and further relief as the Court deems just and proper.

Dated:  April 3, 2013                               SEWARD & KISSEL LLP

                                                                      By:  /s/ *Bruce G. Paulsen*
                                                                             Bruce G. Paulsen (BP-9563)
                                                                             Michael B. Weitman (MW-0523)
                                                                             SEWARD & KISSEL LLP
                                                                             One Battery Park Plaza
                                                                             New York, New York
                                                                             Tel:  (212) 574-1200

                                                                             *Attorneys for Respondent Archer Daniels Midland Company (a/k/a Archer-Daniels-Midland Co.)*

SK 26641 0004 1364682