UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALGONQUIN SHIPPING CORP.,

                        Petitioner,

- against -

ARCHER DANIELS MIDLAND COMPANY (a/k/a ARCHER-DANIELS-MIDLAND CO.),

                        Respondent.

No. 13-cv-1747

---

**RESPONDENT'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITIONER'S MOTION TO CONFIRM AND
IN SUPPORT OF RESPONDENT'S CROSS-MOTION TO VACATE**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

Preliminary Statement ........................................................................................................................ 1

Statement of Facts .............................................................................................................................. 3

    A.    Parties ...................................................................................................................... 3

    B.    Underlying Facts .................................................................................................... 3

    C.    The Arbitration ...................................................................................................... 4

    D.    The Award ............................................................................................................. 6

Argument ........................................................................................................................................... 7

    A.    Standard for Vacatur ............................................................................................. 7

    B.    The Law of Manifest Disregard ............................................................................ 8

    C.    The Final Agreement – And Only The Final Agreement – Contained the Terms of the Parties' Agreement ........................................................................... 9

        1.    UCC 2-202 Precludes Consideration of Parol Evidence ........................... 9

        2.    Owner Did Not Reserve Any Rights in the Final Agreement to Enforce the Alleged Prior Agreement ....................................................... 10

        3.    The Final Agreement Contained Strong Integration Language That Precluded Consideration of the Alleged Prior Agreement ...................... 11

        4.    The Final Agreement Superseded the Alleged Prior Agreement ............ 11

CONCLUSION ................................................................................................................................ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Fahnestock & Co. v. Waltman*,
    935 F.2d 512 (2d Cir. 1991) .................................................................................9

*Halcot Navigation L.P. v. Stolt-Nielsen Transportation Group, BV*,
    491 F. Supp. 2d 413 (S.D.N.Y. 2007) ................................................................7, 8

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
    128 S. Ct. 1396 (2008) .........................................................................................8

*Indep. Energy Corp. v. Trigen Energy Corp.*,
    944 F. Supp. 1184 (S.D.N.Y. 1996) ..............................................................11, 12

*Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*,
    373 F. Supp. 2d 340 (S.D.N.Y. 2005) ..................................................................9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*,
    808 F.2d 930 (2d Cir. 1986) .................................................................................8

*New York Telephone Co. v. Communications Workers of America Local 1100*,
    256 F.3d 89 (2d Cir. 2001). ..................................................................................8

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
    497 F.3d 133 (2d Cir. 2007) .................................................................................8

*Private One of N.Y. LLC v. JMRL Sales & Serv., Inc.*,
    471 F. Supp. 2d 216 (E.D.N.Y. 2007) ................................................................12

*Rich v. Spartis*,
    516 F.3d 75 (2d Cir. 2008) ...................................................................................8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds,*  130 S. Ct. 1758 (2010) ......8

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) ..........................................................................7, 8, 9

## STATE CASES

*Glove Food Servs. Corp. v. Consolidated Edison Co. of N.Y., Inc.*,
    184 A.D.2d 278 (1st Dep't 1992) .......................................................................12

*Intershoe, Inc. v. Bankers Trust Co.*,
   77 N.Y.2d 517 (1991)..................................................................................................10

*Mallad Constr. Corp. v. County Fed. Savings and Loan Ass'n*,
   32 N.Y.2d 285 (1973)..................................................................................................12

*Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc.*,
   210 A.D.2d 393 (2d Dep't 1994) ................................................................................10

*Battista v. Radesi*,
   112 A.D.2d 42 (4th Dep't 1985) .................................................................................10

## FEDERAL STATUTES

9 U.S.C. § 10..........................................................................................................................7

9 U.S.C. § 202........................................................................................................................7

## STATE STATUTES

N.Y. U.C.C. § 2-201 .........................................................................................................6, 9

N.Y. U.C.C. § 2-202 .......................................................................................................9, 10

## TREATIES AND FOREIGN STATUTES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   21 U.S.T. 2517, 330 U.N.T.S. 38 (Dec. 29, 1970).....................................................7

Respondent Archer Daniels Midland Company (a/k/a Archer-Daniels-Midland Co.) ("Respondent" or "ADM"), respectfully submits this memorandum of law and the accompanying Affidavit of Bruce G. Paulsen, sworn to on April 2, 2013 ("Paulsen Aff.") in opposition to Petitioner Algonquin Shipping Corp.'s ("Petitioner" or "Owner") motion to confirm and in support of its cross-motion to vacate the arbitration award, dated February 13, 2013 (the "Award").[1]

## PRELIMINARY STATEMENT

This is a simple contract case involving the sale of a vessel by Owner to ADM. There is a binding and complete agreement memorializing this sale, although Owner, in its motion to confirm the Award, fails to mention its existence. Similarly, a panel of the Society of Maritime Arbitrators ("SMA") chose to ignore binding and controlling law, clearly applicable here, and transmuted this final agreement into a so-called "mitigation contract" to reach a result they perceived as commercially just but which is legally untenable. The resulting Award is in manifest disregard of the law and cannot stand.

Neither party disputed any of the material facts underlying the Award (no witnesses were presented by either side), which are relatively straightforward (despite Owner's failure to mention the most significant facts in its Petition). In the summer of 2008, Owner, as seller, and ADM, as buyer, commenced negotiations for the sale of the M/V Algonquin (the "Vessel"). By mid-September, Owner believed the parties had reached a deal. ADM disagreed, and no signed contract memorializing this purported deal exists.

In the face of this disagreement, the parties nevertheless agreed, on a without prejudice basis, to continue negotiations. This led to a final written agreement for the sale of the

---

[1] A copy of the Award is attached to the Petition to Confirm Arbitration Award (the "Petition") as Exhibit B.

Vessel at a lower price than that purportedly agreed to in September. Yet, unlike the parties' "without prejudice" discussions leading up to this agreement, the signed writing contained no such reservation of rights, and included strong integration language. Pursuant to this contract, the ship was sold. Owner, however, apparently was dissatisfied with the final sales price of the Vessel and commenced arbitration, arguing that the parties had reached a deal in mid-September, and that the contract entered into thereafter was a "mitigation contract."

This Court should deny Owner's motion to confirm and instead vacate the Award for four simple reasons, all of which are supported by well-settled New York law, clearly applicable here:

- The parties' clear and unambiguous written agreement governed the terms of the sale, yet the panel resorted to parol evidence;

- The parties' written agreement contained no reservation of rights to enforce the alleged prior agreement;

- The parties' written agreement contained strong integration language; and

- The parties' final, written agreement – regarding the same subject matter as the alleged prior agreement – superseded and subsumed any prior contracts or negotiations as a matter of law.

Simply put, one cannot sell the same ship twice to the same buyer, and the arbitrators did not need to look any further than the final contract – a document that Owner has not mentioned to the Court in its motion to confirm.

In short, the panel wrote off the parties' written agreement as a "mitigation contract," dismissed the integration clause as an "inspection clause," and issued an award that is

2

infected with gross legal error, in manifest disregard of the law, and cannot stand. It must be vacated.

## STATEMENT OF FACTS[2]

A.  Parties

Petitioner Algonquin Shipping Corp. is a business entity organized under the laws of the Marshall Islands with its principal place of business in Bermuda. Petition ¶ 2. Respondent ADM is a business entity organized under the laws of the state of Delaware, with its principal place of business in the State of Illinois. *Id.* ¶ 3; *see also* ADM's Answer and Counterclaim ("Answer") ¶ 3.

B.  Underlying Facts

In the summer of 2008, Owner and ADM commenced negotiations for the sale of the Vessel. Communicating via brokers, the parties purportedly agreed to a sale in mid-September at a price of approximately $22.5 million. According to Owner, a Memorandum of Agreement, dated September 16, 2008 (the "Alleged Prior Agreement") contained the terms of this purported agreement.[3] ADM, however, maintained that contract issues remained open at that time, refused to consummate the deal, and never signed the Alleged Prior Agreement. Notwithstanding, Owner contended that the parties' communications leading up to the Alleged Prior Agreement established a binding contract.

Despite their disagreement as to the legal effect of the Alleged Prior Agreement, the parties nevertheless agreed, on a without prejudice basis, to continue negotiations for the sale of the Vessel in hopes they could agree on a deal. In a Memorandum of Agreement, dated

---

[2]   Except as otherwise noted, the Statement of Facts are drawn primarily from the Award.

[3]   The Alleged Prior Agreement is contained within the documents attached to the Petition as Exhibit A.

3

October 8, 2008 (the "Final Agreement"), the parties agreed to a sales price of approximately $18 million.[4]  The Final Agreement was signed by both parties and contained all materials terms of the parties' agreement, including a clause that stated the sale was "outright and definite, subject only to the terms of this agreement."  Final Agreement, Clause 4.  Moreover, although the parties admittedly reserved their rights leading up to the formation of this agreement, there is no reservation of rights included in the Final Agreement.  The deal closed in January 2009, and the Final Agreement was fully performed by both parties when the Vessel was delivered to ADM in China, and payment tendered to Owner.

    C.    <u>The Arbitration</u>

Pursuant to an arbitration clause, Owner commenced the underlying arbitration proceeding before a panel of SMA arbitrators in New York.  *See* Alleged Prior Agreement, Clause 16; Final Agreement, Clause 16.  The arbitration clause also required the application of New York law.  *Id.*

At the outset of the arbitration, the parties agreed to submit the dispute to the panel on documents, which effectively constituted cross-motions for summary judgment.  The following documents were submitted for the panel's consideration: (1) Owner's Submission of Claim, dated April 1, 2010, (2) ADM's Response, dated June 28, 2010, (3) Owner's Reply, dated September 16, 2010, (4) ADM's Memorandum in Response, dated October 5, 2010, (5) Owner's letter, dated October 26, 2010, (6) ADM's letter, dated November 5, 2010, (7) Owner's letter, dated November 17, 2010, and (8) ADM's letter, dated November 19, 2010.[5]

---

[4]    The Final Agreement is attached to the Paulsen Affidavit as Exhibit 1.

[5]    Copies of these submissions are attached to the Paulsen Affidavit as Exhibits 2 through 9, respectively.

4

For its part, Owner contended that the unsigned Alleged Prior Agreement constituted a binding contract, any subsequent negotiations were under a reservation of rights, and the Final Agreement was a so-called "mitigation contract," purportedly entered into by Owner solely to mitigate its damages arising out of ADM's alleged breach of the Alleged Prior Agreement.

ADM responded that (1) the Alleged Prior Agreement was not a binding contract because it was never signed by ADM and certain items remained open, (2) even if the Alleged Prior Agreement was a binding contract, the Final Agreement superseded and/or invalidated it, (3) similarly, the Final Agreement constituted a novation or abandonment of the Alleged Prior Agreement, and (4) the Final Agreement contained no "reservation of rights" language, but instead contained an express statement that the sale was "outright and definite, subject only to the terms and conditions of this Agreement."  Final Agreement, Clause 4.  The Final Agreement was therefore the only binding contract for the sale of the Vessel, which, ADM argued, could not be sold twice between the same parties.

On January 17, 2011, the panel summarily denied the parties' applications and directed the parties to proceed to discovery.  *See* Award, at 3.

Upon the completion of discovery, the parties advised the panel that they intended to resubmit the dispute to the panel on the prior submissions, complemented by oral argument, to be held on July 12, 2012.[6]  *See* Award, at 3-4.

Before oral argument, the parties submitted additional cases and at the conclusion of the oral argument, the panel agreed to accept additional letter-briefs from the parties on the

---

[6]   A copy of the oral argument transcript is attached to the Paulsen Affidavit as Exhibit 10.

issue of whether the Final Agreement superseded the Alleged Prior Agreement under New York law.[7]  *See* Award, at 4.

    D.    <u>The Award</u>

On February 13, 2013, the panel issued the Award in favor of Owner, awarding it $5,349,767.38, with interest to accrue at the rate of 3.25% per annum on the principal amount of $4,582,500.00 if the award is not paid within 30 days after issuance of the award.  Award, at 21.  This amount was comprised of the difference in sale price between the Alleged Prior Agreement and the Final Agreement, plus attorneys' fees and costs.

In rendering the Award, the panel first concluded that the Alleged Prior Agreement constituted a binding contract that satisfied the requirements of UCC § 2-201.  Award, at 15-16.  The panel also concluded that the law of novation and abandonment did not apply.  *Id.* at 17-18.  Although ADM disagrees with these conclusions, in the interest of preserving all parties' and the Court's resources, those findings are not the subject of the instant motion to vacate.

But the panel refused to apply binding and controlling precedent regarding integration clauses, concluding that Clause 4 of the Final Agreement (i.e., the sale was "outright and definite, subject only to the terms and conditions of this Agreement") was instead an inapplicable "inspection clause."  Award, at 16-17.  Finally, although the Panel recognized that "one cannot sell the same ship twice and *no law exists stating that one can have two sales contracts for the same goods*," the panel nevertheless stated, without any support, that "[t]he circumstances of this particular case do not specifically require a reservation of rights clause in

---

[7]    Copies of ADM's letter-brief, dated August 3, 2012, and Owner's letter-brief, dated August 13, 2012, are attached to the Paulsen Affidavit as Exhibits 11 and 12, respectively.

the [Final Agreement] because *we are dealing with two separate, independent contracts.*" *Id.* at 18 (emphasis added). Both of these conclusions are in manifest disregard of the law, and the Award should therefore be vacated.

## ARGUMENT

### I. The Award Must Be Vacated

#### A. Standard for Vacatur

As Owner acknowledges, *see* Memorandum of Law in Support of Motion for Confirmation of Award ("Owner Mem."), at 3, the Award in this case is considered "nondomestic," *see* 9 U.S.C. § 202, and governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also referred to as the New York Convention, (the "Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38 (Dec. 29, 1970). Under Article V(1)(e) of the Convention, this Court can refuse confirmation of the Award where "the award . . . has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." 21 U.S.T. 2517, Art. V. Owner also admits (Owner Mem. at 4) that the Second Circuit has interpreted this phrase to authorize vacatur of an arbitral award under the domestic law of the state in which the award was rendered, *i.e.*, the Federal Arbitration Act (the "FAA"). *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19-20 (2d Cir. 1997). The burden of proof for vacating an arbitration award lies on the party opposing enforcement of the award. *Halcot Navigation L.P. v. Stolt-Nielsen Transp. Grp., BV*, 491 F. Supp. 2d 413, 420 (S.D.N.Y. 2007).

The FAA allows courts to vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any misbehavior by which the rights of any party have been prejudiced" or "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(3), (4). The Second Circuit interprets this

7

provision as subsuming grounds for vacatur of an arbitration award where the arbitrator or arbitration panel has manifestly disregarded applicable law. *See Halcot Navigation L.P.*, 491 F. Supp. 2d at 419-20.  As the Second Circuit stated in *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds at* 130 S. Ct. 1758 (2010), "[w]e agree with those courts that . . . think that 'manifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA remains a valid ground for vacating arbitration awards," even after the doctrine was commented on in dicta in *Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008).  *Stolt-Nielsen*, 548 F.3d at 95.  Although Owner lists several grounds for vacatur under the FAA and the Convention in its memorandum of law, it fails to mention "manifest disregard of the law" – grounds that clearly apply here.

        B.      The Law of Manifest Disregard

An arbitration award may be vacated on the grounds that it was in manifest disregard of the law where "'the error . . . [was] obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.'" *Yusuf*, 126 F.3d at 24 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)). Further, "'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.'" *Id.*  Where an arbitrator explicitly rejects applicable case law, the arbitrator manifestly disregards the law.  *N.Y. Tel. Co. v. Commc'ns Workers of Amer. Local 1100*, 256 F.3d 89, 91 (2d Cir. 2001).  Courts may vacate an arbitration award if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* at 91 (affirming vacatur of arbitration award); *see also Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). "[I]f the arbitrators simply ignore the applicable law, the literal application of a manifest

disregard standard should presumably *compel vacation* of the award." *Rich v. Spartis*, 516 F.3d 75, 82 (2d Cir. 2008) (internal quotation marks omitted, emphasis added).

Here, the arbitration panel made more than a "'[m]ere error in the law.'" *See Yusuf*, 126 F.3d at 23 (quoting *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515-16 (2d Cir. 1991)). The arbitrators were well aware of the governing law – which ADM briefed to them and which was well defined, explicit, and clearly applicable. The tribunal patently ignored that law, and the Award should be vacated. *See, e.g., Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 349 (S.D.N.Y. 2005) (partially vacating award; vacatur is appropriate where "the governing law was well defined, explicit, and clearly applicable; and . . . the Arbitrator appreciated the existence of this law but decided to ignore and pay no attention to it" (internal quotation marks omitted)).

    C.    The Final Agreement – And Only The Final Agreement – Contained the Terms of the Parties' Agreement

        1.    UCC 2-202 Precludes Consideration of Parol Evidence

The ship sale contract at issue here is governed by New York's Uniform Commercial Code (the "UCC"). N.Y. U.C.C. § 2-201(1). Section 2-202 of the UCC prohibits a party from using evidence of a prior agreement or a contemporaneous oral agreement to vary the terms of a final written agreement. The statute states, in part:

> *Terms* with respect to which the confirmatory memoranda of the parties agree or *which are otherwise set forth in a writing intended by the parties as a final expression of their agreement* with respect to such terms as are included therein *may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement* . . .

N.Y. U.C.C. § 2-202 (emphasis added). By accepting Owner's argument that the $18 million price term in the Alleged Prior Agreement could replace the $22.5 million price term in the parties' subsequent Final Agreement, the panel ignored this clearly applicable law, which was

9

repeatedly brought to their attention in several of ADM's submissions.  *See* Paulsen Aff. Ex. 3, at 7-8; Ex. 5, at 6-7; Ex. 7, at 2.  This is plainly improper under New York law.  *See Intershoe, Inc. v. Bankers Trust Co.*, 77 N.Y.2d 517, 523 (1991) (holding that, pursuant to U.C.C. § 2-202, parol evidence could not be used to contradict a term of the final written contract); *Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc.*, 210 A.D.2d 393, 394 (2d Dep't 1994) (same); *Battista v. Radesi*, 112 A.D.2d 42, 42 (4th Dep't 1985) ("A writing intended by the parties to be the final expression of their agreement may not be contradicted by evidence of any prior agreement.") (internal citations omitted).  On this basis alone, the Award should be vacated.

To avoid this inevitable result, Owner argued to the panel that it sought recovery under the Alleged Prior Agreement, and the Final Agreement was relevant only to measure its purported damages.  *See* Paulsen Aff. Ex. 4, at 13.  As an initial matter, Owner cannot avoid the plain meaning of U.C.C. § 2-202 by purporting to bring its breach of contract claim pursuant to a non-existent Prior Alleged Agreement.  Moreover, in making this argument, Owner conceded that the Final Agreement "was a legitimate and enforceable agreement," yet somehow claimed it was only partially relevant to the parties' dispute.  *Id.*  This nonsensical argument has no basis in law, yet the panel accepted it wholesale.  *See* Award, at 14 ("We view the MOA of October 8, 2008 [the Final Agreement] as a mitigation contract which entitles Seller to an award of damages.").

        2.    <u>Owner Did Not Reserve Any Rights in the Final Agreement to Enforce the Alleged Prior Agreement</u>

Compounding this error, the panel ignored the absence of any language in the Final Agreement which could be construed to reserve Owner's rights to enforce the Alleged Prior Agreement.  Indeed, the panel acknowledged that the absence of such language was "undisputed."  Award, at 18.  Yet, apparently influenced by the fact that the parties had, in fact,

reserved their rights leading up to the Final Agreement – but not in the writing itself – the panel determined that "[t]he circumstances of this particular case do not specifically require a reservation of rights clause in the [Final Agreement] because we are dealing with two separate, independent contracts." *Id.* This statement has no support in the law, and none was provided.

        3.      <u>The Final Agreement Contained Strong Integration Language That Precluded Consideration of the Alleged Prior Agreement</u>

Furthermore, if there was any question at all as to whether it was appropriate for the panel to find support for its conclusions beyond the four corners of the Final Agreement, it was definitively answered by Clause 4 of the Final Agreement: "the sale is outright and definite, subject only to the terms and conditions of this Agreement." Final Agreement, Clause 4. Inexplicably, the panel wrote that it "disagree[s] with this interpretation." Award, at 16. But, the quoted language is not an "interpretation" at all, but rather, <u>an express quote from the Final Agreement</u> that is clear and unambiguous.

Nevertheless, the panel determined that "[t]he relevant part of the clause addresses the vessel's inspection as to condition and the acceptance of the classification records," and it is therefore not "an all-encompassing disclaimer of prior events." Award, at 16-17. There is no question that Clause 4 also related to inspection of the Vessel, but this does not render meaningless the strong integration language in the latter half of the clause, and the panel cited nothing that would allow it to do so.

        4.      <u>The Final Agreement Superseded the Alleged Prior Agreement</u>

Finally, as ADM argued to the panel, the Final Agreement superseded the Alleged Prior Agreement, and, as a result, Owner could not, as a matter of law, sustain any of its claims against ADM. *See* Paulsen Aff. Ex. 11, at 1-2 (citing *Private One of N.Y. LLC v. JMRL Sales & Serv., Inc.*, 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007) ("Under New York law, a subsequent

11

contract *regarding the same subject matter* supersedes the prior contract.") (emphasis added); *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184 (S.D.N.Y. 1996) (concluding subsequent written agreement *addressed to the same subject matter* superseded any prior oral agreement or contract)).  As noted by counsel for ADM at oral argument, this authority applies "*even in the absence of an integration clause*."  *See* Paulsen Aff. Ex. 10, at 42:4-5 (emphasis added); *see also id.* Ex. 11, at 2 (citing *Private One*, 471 F. Supp. 2d at 223 (noting that, even absent an integration or merger clause, prior agreements are "'deemed to merge and be subsumed in a later written agreement'") (quoting *Indep. Energy Corp.*, 471 F. Supp. at 1195)).

Owner attempted to rebut these authorities, but its arguments were unavailing. *See* Paulsen Aff. Ex. 11, at 2-3 (distinguishing cases).  For example, Owner relied on *Glove Food Servs. Corp. v. Consolidated Edison Co. of N.Y., Inc.*, 184 A.D.2d 278 (1st Dep't 1992), a case which dealt with two successive contracts, covering two different time periods.  The New York Court of Appeals decision in *Mallad Constr. Corp. v. County Fed. Savings and Loan Ass'n*, 32 N.Y.2d 285 (1973), was equally inapplicable.  In that case, there was a prior binding contract – a loan commitment – that expired, and a new loan commitment that was issued to a different entity.  *Id.* at 289-90.  Yet, even on those distinguishable facts, the *Mallad* court noted that "a new agreement executed before or after a breach, at least if performed, operates as an accord and satisfaction of a prior covenant."  *Id.* at 293.

Owner nevertheless contended that the question of whether the Final Agreement superseded the Prior Alleged Agreement was one of intent, *see* Paulsen Aff. Ex. 12, at 1, but such an analysis was not warranted here.  Not only did Owner fail to reserve any rights in the Final Agreement (which might have allowed the panel to delve into the question of intent), but

the parties included the express statement that "the sale [was] subject only to the terms and conditions of this Agreement."  Final Agreement, Clause 4.

The panel made little mention of the law of superseding contracts, and distinguished the facts to the detriment of the law to reach what it deemed to be a commercially just result.  *See, e.g.*, Award, at 18 ("Counsel for ADM has succinctly stated that one cannot sell the same ship twice and no law exists stating that one can have two sales contracts for the same goods.  *This is all true enough*, but we see the underlying facts differently, leading us to the conclusion we have reached." (emphasis added)).  This is plainly not proper.

The underlying dispute, which turns on simple propositions of contract law, should have resulted in the dismissal of Owner's claims under the Alleged Prior Agreement.  The Final Agreement, which was reduced to a writing, signed by both parties, and contained no reservation of rights, was clear on its face and governed the parties' agreement.  Further, it was fully performed.  Add to that the Final Agreement's strong integration language and the law of superseding contracts and the Award is a result that cannot stand.  Accordingly, the panel manifestly disregarded the law, Owner's motion to confirm the Award should be denied and the Petition dismissed, and ADM's motion to vacate the Award should be granted.

## CONCLUSION

By reason of the foregoing, Petitioner respectfully requests that the Court deny Owner's motion to confirm the Award and dismiss the Petition, grant ADM's cross-motion to vacate the Award, and grant ADM such other and further relief as the Court deems just and proper.

New York, New York
April 3, 2013

**SEWARD & KISSEL LLP**

By:   /s/ Bruce G. Paulsen

    Bruce G. Paulsen
    Michael B. Weitman
One Battery Park Plaza
New York, NY 10004
212-574-1500

*Counsel for Respondent Archer Daniels Midland Company (a/k/a Archer-Daniels-Midland Co.)*

SK 26641 0004 1365063